Vonnie Lee Riles sued his employer, Jim Walter Resources, Inc., seeking to recover workers' compensation benefits for a psychological injury he allegedly sustained during the course of his employment with Jim Walter Resources. Riles also alleged a retaliatory discharge in violation of § 25-5-11.1, Ala. Code 1975. The workers' compensation claim and the retaliatory-discharge claim were severed, and the workers' compensation claim was referred to a special master for trial. Following an ore tenus proceeding, the special master, on November 18, 2002, issued a report and recommendation containing findings of fact and conclusions of law determining that Riles's psychological injury was compensable. The trial court, on December 2, 2002, entered an order adopting the special master's report and recommendation.
The special master, on January 29, 2003, issued a supplemental report and recommendation that Riles be awarded temporary total disability and setting forth the amount of those benefits. The trial court, on March 17, 2003, entered an order adopting the special master's supplemental report and recommendation. The trial court specifically noted that Riles had yet to reach maximum medical improvement; therefore, the trial court made no determination as to the extent of any permanent disability. The trial court certified the judgment as final pursuant to Rule 54(b), Ala. R. Civ. P. Jim Walter Resources appeals. *Page 120 
This case is governed by the 1992 Workers' Compensation Act,25-5-1 et seq., Ala. Code 1975. This Act provides that an appellate court's review of the standard of proof and its consideration of other legal issues in a workers' compensation case shall be without a presumption of correctness. §25-5-81(e)(1), Ala. Code 1975. It further provides that when an appellate court reviews a trial court's findings of fact, those findings will not be reversed if they are supported by substantial evidence. § 25-5-81(e)(2). Our supreme court "has defined the term `substantial evidence,' as it is used in §12-21-12(d), to mean `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala. 1996), quoting West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989). This court has also concluded: "The [1992 Workers' Compensation] Act did not alter the rule that this court does not weigh the evidence before the trial court."Edwards v. Jesse Stutts, Inc., 655 So.2d 1012, 1014
(Ala.Civ.App. 1995).
At the time of the incident giving rise to this claim, Riles had been employed as an underground coal miner with Jim Walter Resources for approximately 28 years. On September 23, 2001, Riles was working the evening shift at the Jim Walter Resources Number Five mine when an explosion occurred. Riles and the crew he was working with were in a separate section of the mine at the time of the explosion and were not aware that an explosion had occurred. Riles and his crew were directed to the section of the mine where the explosion had occurred to help fight a fire. While Riles and his crew were en route to the area of the mine where the explosion had occurred, a second explosion occurred. Riles testified that he was blown against the "rib"[1] of the mine by the force of the second explosion, striking his neck and shoulder, and that he was engulfed in smoke and dust. Riles stated that once he reached the surface of the mine he informed a supervisor that he had struck his neck and shoulder during the second explosion but that he was not "hurt that bad." Riles testified that he bruised his shoulder, suffered a stiff neck, and "coughed for days" because of the explosion. Riles did not seek any medical treatment for his physical injuries because "it looked liked to [him they were] getting better." Riles's physical injuries resolved soon after the explosion, although he stated that he suffers from an occasional cough and stiff neck. Thirteen of Riles's coworkers died in the explosions. Following the explosions, the Number Five mine was temporarily closed and Riles was off of work.
On October 10, 2001, Riles notified Jim Walter Resources by letter that he was suffering from "nightmares, loss of sleep, anxiety and nervousness" and that he was in need of treatment from a mental-health professional. Riles was referred to a company psychologist who in turn referred Riles to Dr. Glen O. Archibald, a psychiatrist.
Riles was first seen by Dr. Archibald on November 6, 2001. Riles gave Dr. Archibald a history of being present in the mine at the time of the explosions and of being blown against the "rib." He complained of generalized anxiety, nightmares, difficulty in sleeping, and a decreased libido following the explosions. Dr. Archibald testified that Riles did not report suffering any physical injuries in the explosions other than the history he gave him of being *Page 121 
blown against the "rib." Dr. Archibald testified as follows:
 "Q. Did he tell you whether or not he received any physical injuries during that explosion?
"A. I don't recall.
". . . .
 "Q. So you do not recall him giving you a history of having physical injuries?
"A. Not really.
 "Q. Assume, Doctor, that if he were to give a physical history of having been knocked against the mine wall in the explosion and having trauma at that time —
"A. I recall him being knocked.
"Q. Tell us what you recall.
 "A. What I recall is that he told us that this per the explosion they were running out. Somebody met them. It was a group of them. And someone said [they] needed to go back and help. And he went forward. And while he was going forward then the explosion, or going towards. I guess the impression I got was the explosion, another explosion happened. He was slammed against the wall . . . something to that extent, that he was — had he gone in the opposite direction he said he would have been, you know dead. He went away from it.
 "Q. Is that he had some physical traumas, is that part of what you're evaluating?
". . . .
"A. Huh-uh (negative)."
Dr. Archibald diagnosed Riles with post-traumatic stress disorder. Dr. Archibald described post-traumatic stress disorder as follows:
 "[Post-traumatic stress disorder is] a psychological illness you can say that occurs usually when someone feels very — experienced a traumatic — usually a traumatic event. For the average person it is a situation that either themselves or someone close to them lives were in danger. And usually the result of this is nightmares, flashbacks, fear of going around the situation again, intense fear, avoidance, numbing experiences, feeling their lives are shortened, things are never going to be the way they use to be. Just basically they've changed completely. They just become more reclusive and have avoidance."
Dr. Archibald stated that Riles's post-traumatic stress disorder was associated with Riles's having been in the mine at the time of the explosions. Dr. Archibald testified that at the time of trial Riles was unable to return to work as an underground coal miner because "he's so afraid to go down," and that he was not sure when Riles would be able to return to underground coal mining.
Riles was seen by his family physician, Dr. David B. Champlin, on October 15, 2001. Dr. Champlin testified regarding Riles's complaints at that time as follows:
 "Q. Do your notes reflect or does your memory reflect any conversation you may have had with Mr. Riles on October 15th?
 "A. I was pleased with his progress, as far as hypertension and diabetes. I had seen him months before on August the 3rd, and ordered laboratory work on him. We reviewed that laboratory work, and it was all very good. But his chief complaint was the anxiety, which had been present since September the — I've forgotten, I think 23rd, something like that, when this explosion occurred. He had had difficulty with sleep, bad dreams, he briefly described to me what the explosion amounted to, what the problem in the mine was. . . . He did complain of a cough that he had had immediately following the explosion, and *Page 122 
general muscle soreness. He told me he had been thrown against or knocked against a wall, knocked down and had been kind of engulfed in a cloud of smoke and dust. . . . However, most of these — those things, the cough, the soreness, the being knocked down, were not significant problems three weeks later. What his biggest problem was, he was still afraid. He —
". . . .
 "Q. . . . On that first October visit that you saw him that you're testifying about, was there anything apparent to you, as a medical professional, wrong with his shoulder or neck?
 "A. No. What he complained of, I did not expect to see any physical evidence of injury. His chest was clear. He didn't have any obvious lacerations or bruises. But three weeks later, and he said himself that he had a cough that gradually cleared, he still coughed some; but this was not a real problem to him at the time. It had been, maybe, but his biggest problem was he couldn't get over the anxiety."
Dr. Champlin continued to treat Riles for his anxiety and his "genuine morbid fear" of returning to the underground coal mines. Dr. Champlin stated that Riles was not emotionally capable of returning to work as an underground coal miner and agreed with Dr. Archibald's diagnosis of post-traumatic stress disorder.
Dr. Champlin testified as to the cause of Riles's post-traumatic stress disorder as follows:
 "Q. Do you have an opinion as to whether or not Mr. Riles's medical/emotional states relates, in any way, to the physical injury, even minimal as it was, that he incurred, allegedly incurred on September 23, 2001?
 "A. Yes. I think very definitely, it did — not to — he experienced it — being knocked down and breathing the dust and smoke. I think that the actual physical experience very definitely makes it more real, rather than someone watching television, watching this happen to people in New York. I think, had you been there and been knocked down, been covered with smoke, it's going to make the emotional aspect much more real.
". . . .
 "Q. And I just asked you, during your deposition, flat out whether you had an opinion on the cause of Mr. Riles's post-traumatic stress disorder. I want to reask that question here at the trial. Isn't it true, Doctor, that Mr. Riles's post-traumatic stress disorder or syndrome was caused by his being caught up in this tragic accident that occurred?
"A. Yes."
Riles and other employees were called back to work by Jim Walter Resources in December 2001 when the Number Five mine was reopened. Riles presented Jim Walter Resources with letters from both Dr. Archibald and Dr. Champlin indicating that Riles was unable to return to work as an underground coal miner and requesting work on the surface of the mine.
Jim Walter Resources argues on appeal that the trial court erred in finding Riles's psychological injury compensable, because, it says, substantial evidence was not presented indicating that the psychological injury was produced by or proximately caused by a physical injury. In order for a psychological injury to be compensable under the workers' compensation act, it must be "produced [or] proximately caused by some physical injury to the body." § 25-5-1(9), Ala. Code 1975. See Goolsby v. Family Dollar Stores of Alabama, Inc.,689 So.2d 104 (Ala.Civ.App. *Page 123 
1996). Additionally, the physical injury need not be the sole cause of the psychological injury so long as it is a contributing cause of the psychological injury. Ex parte Vongsouvanh,795 So.2d 625 (Ala. 2000).
After reviewing the record in this case, we conclude that Riles presented substantial evidence indicating that the physical injuries he received in the explosion, minimal as they were, at least contributed to his post-traumatic stress disorder. The evidence presented indicated that Riles was thrown against a support pillar by the force of the explosion, striking his neck and shoulder, and that he was engulfed in smoke and dust. Dr. Champlin testified that Riles's post-traumatic stress disorder was caused by his "being caught up in this tragic accident" and that his injuries "definitely" related to his post-traumatic stress disorder. Dr. Champlin stated that Riles's psychological condition was related to his physical injuries in that the physical experiences of being knocked down and engulfed in smoke and dust made the psychological effect of the explosion "much more real."
AFFIRMED.
CRAWLEY, J., concurs specially.
THOMPSON, J., concurs in the result, without writing.
PITTMAN, J., dissents, without writing.
MURDOCK, J., dissents, with writing.
[1] A "rib" is a support column, in a mine.