Frances Smith sued her former employer, CVS Corporation, Inc. ("CVS"), [1] seeking to recover workers' compensation benefits for injuries she allegedly suffered as a result of an on-the-job injury. Smith later amended her complaint to allege tort claims against GAB Robins North America ("GAB") and Barbara Prince. The record indicates that GAB is the workers' compensation insurer for CVS and that Prince is an employee of GAB. The trial court severed the tort claims from the workers' compensation claims "for the purpose of separate trials in this action."
After conducting an ore tenus hearing on Smith's workers' compensation claim, the trial court, on June 15, 2005, entered an order finding Smith to be permanently and totally disabled; however, that order did not determine the amount of benefits to which Smith was entitled. CVS appealed. *Page 1130 
During the pendency of that appeal, this court reinvested the trial court with jurisdiction to enter a final judgment on Smith's workers' compensation claim. The trial court entered an order in which it purported to certify the June 15, 2005, order as final pursuant to Rule 54(b), Ala. R. Civ. P. This court later dismissed CVS's appeal after determining that the June 15, 2005, order failed to
 "`"`sufficiently ascertain and declare the rights of the parties'" so as to constitute a final judgment that would support an appeal. [International Paper Co. v. Dempsey,] 844 So.2d [1236,] 1237 [(Ala.Civ.App. 2002)] (quoting Ex parte DCH Reg'l Med. Ctr., 571 So.2d 1162, 1164
(Ala.Civ.App. 1990)).' Sign Plex v. Tholl, 863 So.2d [1113, 1116 (Ala.Civ.App. 2003)]."
CVS Pharmacy, Inc. v. Smith, 944 So.2d 957, 959
(Ala.Civ.App. 2006).
On remand, the trial court entered and, based on postjudgment motions of the parties, set aside two different orders (each of which had been certified as final pursuant to Rule 54(b)) on Smith's workers' compensation claim.[2] Ultimately, on November 29, 2006, the trial court entered an order in which it determined Smith to be permanently and totally disabled and awarded workers' compensation benefits based on that determination. The trial court certified its November 29, 2006, order as final pursuant to Rule 54(b). CVS filed a post-judgment motion, and the trial court denied that motion. CVS timely appealed.[3]
The relevant facts are as follows. Smith worked full-time[4]
for CVS from 1988 until November 2001 as an order picker. Her job required her to fill "totes," or bins, with merchandise and to place the totes on a conveyor belt; the totes sometimes weighed as much as 35-40 pounds each.
On November 7, 2001, Smith was injured when several totes fell off a conveyor belt and struck her on the back, neck, and side. Immediately following her on-the-job injury, Smith was treated at the emergency room at Brookwood Hospital and released the same day. It appears that Smith suffered bruising as a result of the on-the-job accident and that she initially complained of lower-back pain. Smith returned to work on light-duty restrictions in December 2001.
Smith was initially treated for her injuries by Dr. P. Lauren Savage. After a few months, Smith became dissatisfied with Dr. Savage's treatment, and, after requesting a panel of four physicians pursuant to § 25-5-77(a), Ala. Code 1975, she began receiving treatment from Dr. Gaylon Rodgers. Dr. Rodgers treated Smith for her *Page 1131 
complaints of back, leg, and hip pain. Dr. Rodgers also noted the presence of an indentation on Smith's left hip or thigh that he believed was "either fatty necrosis or muscle atrophy." The treatment Smith received for her injuries from Dr. Savage and Dr. Rodgers included medication and epidural and facet blocks; those doctors also referred Smith to physical therapy. Dr. Rodgers assigned Smith certain restrictions regarding her return to work, and he later referred her to Dr. Gordon Kirschberg, a neurologist, for further treatment.
Dr. Kirschberg treated Smith with medication, and he prescribed physical therapy. It was Dr. Kirschberg's impression that the indentation on Smith's left hip or thigh was caused by trauma resulting from the November 7, 2001, on-the-job accident. Dr. Kirschberg testified that when he last treated Smith in April 2003, he diagnosed her as having chronic back, left-leg, and left-hip pain and that, due to the history he received from Smith, he thought the pain was related to her on-the-job accident. Dr. Kirschberg assigned Smith a disability rating of 7% to the body as a whole.
Dr. Kirschberg testified, however, that Smith had not informed him that she had previously suffered from fibromyalgia; Smith disputed that testimony, indicating instead that she had informed Dr. Kirschberg of that condition. Dr. Kirschberg testified that pain attributable to fibromyalgia was generally diffuse and that Smith's reports to him were of pain in a specific area. Dr. Kirschberg stated that if Smith had been treated before November 2001 for the same pain of which she now complains, that information would be "important," apparently for diagnosis or determining the cause of the pain.
In August 2002, both because of his own observations of Smith and because of notations from the physical therapist's notes, Dr. Kirschberg became convinced that Smith should submit to a psychological evaluation and psychological or psychiatric treatment. Dr. Kirschberg explained that Smith appeared to be depressed. However, it appears that, at that time, CVS referred Smith to a neuropsychologist for an independent medical evaluation and that that doctor did not refer Smith for counseling.[5] Smith was eventually seen by Dr. Daniel M. Doleys, a psychologist who specializes in pain management.
Dr. Doleys testified that he treated Smith for psychological issues related to her chronic pain. Dr. Doleys stated that his testing of Smith indicated that she suffered from moderate depression, and he opined that Smith's psychological profile was consistent with the profiles of about half of all chronic-pain sufferers. Dr. Doleys believed that it was "[c]lear that [Smith] had had issues of pain and difficulties before the [November 7, 2001,] injury." Dr. Doleys testified that Smith's pain experience or her pain perception after her on-the-job accident was likely to be "significantly enhanced" because of her preexisting conditions, such as fibromyalgia. Dr. Doleys explained that "for individuals who have histories of difficulties even though they've been coping; when there is an injury, then the effect of that injury can be more profound in terms of their experience of pain."
Dr. Doleys stated that Smith's psychological condition in itself was not disabling. According to Dr. Doleys, however, Smith's *Page 1132 
psychological condition together with her physical condition meant it was not likely that she would either improve or be capable of returning to work. Dr. Doleys opined that "[t]he probability is very, very small" that Smith would be able to return to work. Dr. Doleys concluded that Smith had reached maximum medical improvement ("MMI") with regard to her psychological condition on October 24, 2003.
Shortly after her accident, Smith returned to work at CVS in a light-duty capacity. However, in May or early June 2002, CVS informed Smith that it no longer had light-duty work available. Smith has not worked since June 2002. CVS's vocational expert opined that Smith had a vocational-disability rating of 50% to 55%. Smith's vocational expert concluded that Smith was 100% vocationally disabled.
In addition to the facts as set forth above, the trial court, in its November 29, 2006, judgment, made a number of findings regarding the facts of this case. Those findings are set forth as follows, in pertinent part:
 "TRIAL STIPULATIONS OF THE PARTIES
 "1. Plaintiff Frances Smith and Defendant CVS Corporation are the proper parties to this action.
 ". . . .
 "3. While acting within the line and scope of her duties as an employee of the Defendant, CVS Corporation on or about November 7, 2001, [Smith] suffered an accident when a box of totes fell on her. However, the parties cannot agree as to whether or not this accident caused any permanent injury.
 ". . . .
 "5. [Smith] reached MMI on August 29, 2002.
 ". . . .
 "18. The only issues in this case to be tried are whether or not there is a compensable injury, the extent of disability therefrom, if any, and the amount of accrued and future indemnity for disability benefits due [Smith] under the Workers' Compensation Act, if any.
 "FINDINGS OF FACT BY THE COURT
 ". . . .
 "After her November 7, 2001, on-the-job injury, Ms. Smith saw workers' compensation-authorized treating physicians Dr. Lauren Savage, Dr. Gaylon Rodgers, Dr. Gordon Kirschberg, Dr. Daniel Doleys, Dr. Lisa Columbia and Physical Therapist Starr Kellogg for treatment. She also saw other non-authorized doctors. The Court has reviewed the depositions and deposition exhibits of Dr. Kirschberg and Dr. Doleys. She had an Independent Medical Evaluation by Dr. Keith Langford. The Court has reviewed Dr. Langford's deposition and the exhibits thereto.
 "Dr. Gordon Kirschberg, a neurologist, said on his physical examination of [Smith] on her first visit to him on June 28, 2002, he found:
 "`this large indentation just below — or back and below the left hip joint which did not look like muscle atrophy. It looked more like subcutaneous lipoatrophy or fat necrosis.'
 "and Dr. Kirschberg came to the conclusion:
 "`That she had some trauma to the left upper thigh to cause this fat necrosis and I thought it was the trauma, and not the necrosis that was causing the pain.'
 "Dr. Kirschberg, in his August 29, 2002, medical record placed Ms. Smith at MMI and gave her a total permanent *Page 1133 
impairment rating of 7% to the `patient as a whole' for her hip and for chronic pain, adding that any psychological impairment would be in addition.
 "Dr. Kirschberg's opinion of the cause of [Smith's] chronic pain condition was `the fall that occurred in November of 2001.'
 "Dr. Kirschberg (through his physical therapist, Starr Kellogg, and on his own) found [Smith] to be depressed and in need of seeing a psychiatrist and possibly pain management.
 "Ms. Smith was referred by Dr. Kirschberg to Dr. Doleys as an authorized treating physician. Dr. Doleys saw Ms. Smith for multidisciplinary assessment and treatment, including psychological issues as they relate to pain and Dr. Columbia, a medical doctor at the Doleys Clinic, saw [Smith] for pain management. Dr. Doleys, a psychologist, first saw [Smith] on June 12, 2003, and at that time concluded that, with her many prior conditions, it was her on-the-job injury in November 2001 that `was the straw that broke the camel's back.'
 "Also, taking into account Smith's prior condition, Dr. Doleys found that the November 2001 on-the-job injury contributed to or exacerbated Smith's problems or `whatever was happening at the time' from a psychological perspective. He found this to be true even taking into account that she had prior stress, depression, and problems prior to the on-the-job injury.
 "Dr. Doleys also agreed with Dr. Keith Langford who stated in his report on [Smith] that:
 "`She is severely affected by the psychological aspects of her chronic pain and the combination of physical symptoms and psychological impact does make it difficult to see her as either improving or being capable of sustaining employment.'
 "Dr. Langford is a neurosurgeon who performed an independent medical evaluation for [CVS] on Ms. Smith and came to the conclusion that she had chronic pain and that her on-the-job injury contributed to and aggravated her pain and psychological problems.
 "In their depositions, Dr. Kirschberg, Dr. Doleys and Dr. Langford were each subjected to full and rigorous cross-examination by counsel for Defendant CVS. However, considered in their entirety, the Court finds as a matter of fact that the deposition testimony of these three doctors supports that there was an on-the-job injury to Ms. Smith on November 7, 2001, that such injury was related to her work at CVS, and that Ms. Smith's on-the-job accident of November 7, 2001, contributed to and thus caused the physical and psychological injuries to Ms. Smith which are the subject of this legal action.
 "Prior to her on-the-job accident on November 7, 2001, Ms. Smith suffered from a number of medical problems, including arthritis in her hands, fibromyalgia in her shoulders and back, and down into her hips, arms, mini-strokes and bronchitis/lung problems, heart problems, and muscular tension/vascular headaches. She had general aches and pains in her left hip prior to the accident from the fibromyalgia.
 "Ms. Smith's injury on November 7, 2001, was to her lower back, tailbone and left hip and thigh. She felt pain in that area from the day of the accident. At trial, she described that the pain she had in her left hip area was different than the pain she had experienced prior to the accident as the result of her fibromyalgia, describing the pain before the accident as `like a general pain' and the *Page 1134 
pain afterwards and at the time of trial as stabbing, burning, sharp pain that hurts all the time.
 ". . . .
 "Ms. Smith has an indentation in her left hip that arose after her accident at CVS. It is shown in photographs taken within a few months after the accident. The indentation in the left hip shown in the photographs show that her left hip was different than her right hip, as her right hip was not and is not `sunk in' whereas her left hip was and is still `sunk in.'
 "On August 29, 2002, Dr. Kirschberg placed Ms. Smith at MMI and gave her work restrictions of no lifting over 30 pounds and frequent breaks. CVS could not return her to her full duty job with those restrictions. [Smith's] Trial Exhibit 30 is an October 21, 2002, letter from CVS stating that CVS has not been able to return her to work based on her restrictions.
 "Ms. Smith has not returned to work, been employed or earned money since June 21, 2002. She testified that she is not able to work at this time and that there is no job she could perform due to her constant pain ('I hurt all the time.') She could not hold down any job, even a part-time job. On a daily basis she usually stays at home and says, `I stay depressed.' Her pain causes her to be depressed.
 "Both Dr. Doleys and Dr. Langford testified in their depositions that Ms. Smith could not sustain employment after and as a result of her November 7, 2001, accident at CVS. The Court observed the appearance and demeanor of Ms. Smith over the two separate days of trial and concludes from its observations that Ms. Smith does in fact suffer from substantial pain and depression.
 "The Court finds as a matter of fact that Ms. Smith was injured in an on-the-job accident at CVS on November 7, 2001, while acting within the line and scope of her job duties, and that such accident contributed to her permanent injury and chronic pain. The Court further finds as a matter of fact that the physical injury that Ms. Smith suffered on-the-job at CVS, and the resulting pain which is related to her physical on-the-job injury, contributed to Ms. Smith's depression and psychological injury and condition.
 "The Court has examined deposition testimony of several physicians, and has heard the live testimony of the Plaintiff Smith and Linda Cheronas, a Human Resources Manager with CVS. The Court has also considered the evidence, reports and testimony of the vocational experts of the parties. After reviewing and considering all of the evidence as well as the observations of the Court at trial, the Court finds as a matter of fact that Smith suffered a compensable injury, and that she is permanently and totally disabled as a result."
The issues CVS raises on appeal challenge the trial court's determination of the extent of Smith's disability, its finding that that disability was caused by Smith's employment, and its conclusion that the on-the-job accident contributed to or aggravated a psychological condition. When this court reviews a trial court's factual findings in a workers' compensation judgment based on those findings will not be reversed if the findings are supported by substantial evidence. § 25-5-81(e)(2), Ala. Code 1975. Substantial evidence is "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v.Founders Life Assurance Co. of *Page 1135 Florida, 547 So.2d 870, 871 (Ala. 1989). This court reviews the facts "in the light most favorable to the findings of the trial court," Whitsett v. BAMSI, Inc.,652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on othergrounds, Ex parte Trinity Indus., Inc., 680 So.2d 262
(Ala. 1996), and this court may not reweigh the evidence presented to the trial court. Edwards v. Jesse Stutts,Inc., 655 So.2d 1012, 1014 (Ala.Civ.App. 1995).
CVS first argues that the trial court erred in concluding that Smith's November 7, 2001, on-the-job accident caused or contributed to her current disability. With regard to the issue of causation in a workers' compensation action, the courts of this state have stated:
 "`[F]or an injury to be compensable under the Workers' Compensation Act, the employee must establish both legal and medical causation. Once legal causation has been established, i.e., once it has been established that an accident arose out of and in the course of employment, medical causation must be established, i.e., that the accident caused the injury for which recovery is sought.'
 "Ex parte Moncrief, 627 So.2d 385, 388
(Ala. 1993) (citation omitted)."
Reeves Rubber, Inc. v. Wallace, 912 So.2d 274, 279
(Ala.Civ.App. 2005).
CVS concedes that Smith has established legal causation, i.e., that her accident arose out of and in the course of her employment. See Ex parte Moncrief, 627 So.2d 385, 388
(Ala. 1993) (legal causation is established by evidence indicating "that an accident arose out of and in the course of employment" (citing Hammons v. Roses Stores, Inc.,547 So.2d 883 (Ala.Civ.App. 1989))); and Reeves Rubber, Inc. v.Wallace, supra (same). CVS argues, however, that the evidence did not support the trial court's finding of medical causation, "`i.e., that the accident caused the injury for which recovery is sought.'" Reeves Rubber, Inc. v.Wallace, 912 So.2d at 279 (quoting Ex parteMoncrief, 627 So.2d at 388).
In its brief on appeal, CVS focuses on Smith's claim regarding her physical injury and her resulting claim of chronic pain. It is undisputed that before her on-the-job accident Smith had been diagnosed with fibromyalgia and that she had seen doctors with complaints of back and hip pain. However, Smith testified, and the trial court found, that her previous pain was different in nature from the pain from which she suffered after her on-the-job accident. Smith explained that her previous pain was general in nature and that it was intermittent; the testimony of Dr. Kirschberg indicated that pain associated with fibromyalgia was often diffuse. Smith insisted that after the on-the-job accident her pain was severe and constant.
In making its argument on this issue, CVS cites those portions of its cross-examinations of Smith's doctors in which CVS questioned whether an alleged prior history of similar back pain was significant in determining whether her current complaints were causally related to her on-the-job accident. In those cross-examinations, CVS asked the doctors hypothetical questions in which the doctors were to assume that Smith had, before her November 7, 2001, on-the-job accident, made complaints of pain similar to or the same as the complaints she made after that accident.
The flaw in CVS's argument, however, is that little to no evidence shows that before the November 7, 2001, on-the-job accident Smith actually made complaints similar to those she made after that accident. The trial court noted in its judgment that the medical providers "were each subjected to full and rigorous cross-examination by *Page 1136 
[CVS]" but that, "considered in [its] entirety," the evidence from those doctors established medical causation. We also note that Dr. Kirschberg testified that he believed that Smith's chronic-pain complaints were the result of her November 2001 on-the-job accident. Given the foregoing, we must conclude that substantial evidence supports the trial court's finding of medical causation and that CVS has failed to demonstrate error with regard to this issue.
CVS also argues on appeal that the trial court erred in finding that Smith's physical injury contributed to or aggravated her psychological problems, i.e., her depression. In making this argument, CVS continues to assert that the evidence did not support a determination of medical causation with regard to Smith's physical injuries. Accordingly, CVS contends that "without a finding of a physical injury, a claim for a psychological injury can not stand." See Jim Walter Res.,Inc. v. Riles, 903 So.2d 118 (Ala.Civ.App. 2004) (plurality opinion). See also § 25-5-1(9), Ala. Code 1975 ("Injury does not include a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body."); and Ex parteVongsouvanh, 795 So.2d 625, 628 (Ala. 2000) ("Under Alabama law, for an employee to recover for psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders.").
However, this court has affirmed the trial court's determination that Smith's on-the-job accident caused her disability. Further, as the trial court noted in its judgment, Dr. Doleys testified that he believed that the on-the-job accident "contributed to and/or exacerbated" any psychological problems Smith was experiencing as a result of her preexisting pain. The trial court also specifically determined that the testimony of Smith's other doctors, when taken as a whole, established causation with regard to Smith's physical and psychological injuries. We must conclude that CVS has failed to demonstrate that the trial court erred in reaching that determination.
CVS also argues that the trial court erred in concluding that Smith is permanently and totally disabled. The determination of the extent of disability is within the trial court's discretion and cannot be disturbed on appeal if there is evidence to support it. Dolgencorp., Inc. v. Hudson,924 So.2d 727, 734 (Ala.Civ.App. 2005) (citing Golden Poultry Co. v.Staggs, 660 So.2d 1348, 1352 (Ala.Civ.App. 1995)). With regard to determining whether an employee is permanently and totally disabled, this court has stated:
 "`The test for total and permanent disability is the inability to perform one's trade and the inability to find gainful employment.' Fuqua v. City of Fairhope, 628 So.2d 758, 759 (Ala.Civ.App. 1993). See also Liberty Trousers v. King, 627 So.2d 422, 424 (Ala.Civ.App. 1993). A `permanent total disability' is defined as including `any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.' § 25-5-57(a)(4)d., Ala. Code 1975; Russell v. Beech Aerospace Services, Inc., 598 So.2d 991, 992
(Ala.Civ.App. 1992)."
Alabama Catfish, Inc. v. James, 669 So.2d 917, 918
(Ala.Civ.App. 1995). See also Boyd Bros. Transp., Inc. v.Asmus, 540 So.2d 757, 759 (Ala.Civ.App. 1988) (stating that § 25-5-57(a)(4)d., Ala. Code 1975, "requires that the employee be unable to perform his trade or unable to obtain reasonably gainful employment"). *Page 1137 
In its brief submitted to this court, CVS argues that the trial court's finding of permanent and total disability is not supported by the record both because Smith's doctors assigned her a disability rating of 7% to the body as a whole and because, it contends, none of those doctors testified that Smith was not capable of gainful employment. In making this argument, however, CVS disregards other evidence, specifically the evidence submitted through the parties' vocational experts and the testimony of two doctors indicating that it was unlikely that Smith could be capable of returning to work.
Smith's vocational expert submitted evidence indicating that Smith had suffered a permanent and total vocational disability, while CVS's vocational expert opined that Smith had suffered a 50% to 55% vocational disability. Although Smith worked for a period of time after her injury, that work had been created for her by CVS in compliance with her light-duty restrictions, and CVS subsequently informed Smith that it no longer had light-duty employment available for her. At the time of the hearing in this matter, Smith, who has only an 8th grade education, was 58 years old, and she complained of chronic pain that prevented her from working. The trial court specifically stated in its judgment that it found Smith's complaints of chronic pain that prevented her from working to be credible. Also, Dr. Doleys testified that he did not believe that it was possible, given Smith's chronic pain and her depression, that she would be capable of maintaining employment. Accordingly, we conclude that CVS has failed to demonstrate that the trial court's disability determination was not supported by substantial evidence.
The trial court's judgment is due to be affirmed.
AFFIRMED.
PITTMAN, BRYAN, and THOMAS, JJ., concur.
MOORE, J., concurs in the result, without writing.
[1] Although the style of Smith's pleadings and of the trial court's orders and judgment incorrectly designate this defendant as "CVS Pharmacy, Inc.," the parties' stipulation that "CVS Corporation" is the proper party to the action was incorporated into the trial court's judgment.
[2] When a judgment or order alters the rights or liabilities of the parties, the party newly aggrieved by the alteration in the order or judgment may file a postjudgment motion.See Rule 59(e), Ala. R. Civ. P.; Ex parteDowling, 477 So.2d 400, 404 (Ala. 1985) (when a trial court grants a party's postjudgment motion and modifies its judgment, the party newly aggrieved by that modified judgment may file a successive postjudgment motion); and Woodall v.Woodall, 506 So.2d 1005, 1007 (Ala.Civ.App. 1987) ("In situations where a judge has granted a postjudgment motion for one party, the nonmoving party aggrieved by the motion has the right under our rules to file his or her own postjudgment motions.").
[3] We note that while CVS's appeal of the November 29, 2006, judgment was pending, the trial court, citing Rule 60(a), Ala. R. Civ. P., entered a revised order on April 17, 2007, entitled "Corrected Revised Workers' Compensation Final Judgment and Order." See Rule 60(a) (allowing, at any time, the correction of clerical errors in judgments).
[4] CVS contended before the trial court that Smith had not worked at "full duty" in the years immediately proceeding her on-the-job accident. The trial court resolved that issue in favor of Smith, and CVS has not challenged that ruling on appeal.
[5] The facts surrounding the handling of the requests for evaluation or treatment of Smith's depression appear to form the basis of Smith's tort claims against GAB and Prince. For the purposes of this appeal, this court has endeavored not to discuss or comment on any facts or disputes related to those claims.