Lloyd Fuqua filed a complaint for workmen's compensation benefits in the Circuit Court of Baldwin County against the City of Fairhope, alleging that he was owed benefits for a work-related injury. Following an oral proceeding, the trial court found that Fuqua incurred a 43% permanent partial disability as a result of his injury. Fuqua appeals.
Fuqua asserts that the trial court erred in refusing to find him totally and permanently disabled to earn a living.
The test for total and permanent disability is the inability to perform one's trade and the inability to find gainful employment. Mead Paper Co. v. Brizendine, 575 So.2d 571
(Ala.Civ.App. 1990). Total disability does not mean entire physical disability or absolute helplessness. Genpak Corp. v.Gibson, 534 So.2d 312 (Ala.Civ.App. 1988).
Section 25-5-57(a)(4)d, Code 1975, defines total disability as: "[A]ny physical injury or mental impairment resulting from an accident, which . . . permanently and totally incapacitates the employee from working at and being retrained for gainful employment, . . . ."
In a workmen's compensation case, this court's review is limited to a determination of whether there is any legal evidence to support the trial court's conclusions. If a reasonable view of the evidence supports the findings of the trial court, this court may then determine whether the correct legal conclusions have been drawn therefrom. Ex parteEastwood Foods, Inc., 575 So.2d 91 (Ala. 1991).
We must determine if a reasonable view of the evidence supports a conclusion that Fuqua's injury has resulted in an inability to perform the work of his trade and an *Page 760 
inability to work at, and to be retrained for, gainful employment.
The record reflects that Fuqua began working for the City of Fairhope in 1976. In October 1989 Fuqua sustained the injury at issue when he fell from the side of Fairhope's garbage truck. The truck ran over him, rolling up his leg and stopping in his pelvic region. Fuqua sustained a "severe crush injury" to his left lower extremity, as well as to his pelvis. He fractured bones in his ankle and foot and dislocated his pelvic bone. He was placed in a body cast for approximately six weeks.
At the time of the accident Fuqua was 43 years of age. He has an IQ of 63, which places him in the mild range of mental retardation. He has a ninth-grade education, but he cannot read or write. He does not drive. He is blind in his left eye. Fuqua's prior work history consists of heavy manual labor.
Dr. Robert Eubanks, Fuqua's treating orthopaedic surgeon, testified in deposition that Fuqua sustained a 10% impairment rating to the body as a whole. Dr. Eubanks testified that Fuqua could not return to his former job. He opined that the pain and the side effects of the drugs would cause Fuqua to be distracted, inattentive, and drowsy, thus limiting his effectiveness. He stated that Fuqua could possibly do some type of sedentary work.
Dr. Eubanks referred Fuqua to Dr. Roy Barnes, a psychiatrist, because, in his opinion, Fuqua was failing to improve due to depression. Dr. Barnes diagnosed Fuqua as having acute, major depression and prolonged post-traumatic stress disorder. He hospitalized Fuqua for the depressive disorder on two occasions. Dr. Barnes placed him on antipsychotic medication, which he was still taking at the time of trial. Dr. Barnes testified in deposition that the medication causes Fuqua significant sedation, visual disturbance, and impaired concentration. Dr. Barnes opined that Fuqua was totally and permanently disabled. He gave his basis for that opinion in the following manner:
 "I think because of the depression — first of all, because of his limited preinjury level of functioning, although he could work and do well apparently at his work setting, when he was injured and developed depression, that it took him over the edge of his level of capacity to do things and to work in a safe setting and where he would be safe and could comply with rules, regulations, orders, attend daily, and so on. He would not be able to do any of that on an ongoing basis. Might be able to get him to do it for a day or two or a week maybe, but I think he would be unsafe on the job, too."
Dr. Eubanks referred Fuqua to Angel Thompson, a "work hardening" expert. Thompson testified that in view of her evaluations, Fuqua was capable of returning to work on the garbage truck. Dr. Eubanks disagreed with Thompson's assessment and would not release Fuqua to resume his former employment.
Guy Walker, Fuqua's vocational expert, testified that, in his opinion, Fuqua would not be able to return to competitive employment.
Tom Christensen, Fairhope's vocational expert, testified that, in his opinion, Fuqua had a 38% to 48% earning disability due to his injury. Christensen did not personally evaluate Fuqua, but relied on his medical records and evaluations by others in reaching his opinion. He testified that Fuqua's vocational potential is very limited and that, left to his own devices, he would have difficulty competing in the labor market. He testified on cross-examination that Fuqua was virtually unemployable.
The trial court made the following findings of fact to support its finding of disability:
 "Dr. Eubanks testified to a 10% impairment rating to the Plaintiff's body as a whole. Further, proof in the case included live testimony by Tom Christensen, a vocational expert, who testified that, in his opinion, the Plaintiff had a 38% to 48% earning disability due to his injury. Based upon this evidence and all of the evidence adduced by the Plaintiff and the Defendant, the Plaintiff incurred a 43% permanent partial disability as a proximate result of his injury. . . ."
From our careful review of the record, we are convinced that the trial court erred in refusing to find Fuqua to be totally and *Page 761 
permanently disabled. The evidence is overwhelming that Fuqua is not able to perform manual labor. All of the experts, including Christensen, testified that he was virtually unemployable. He has been determined to be totally disabled for Social Security and retirement purposes. We find that no reasonable view of the evidence could support any conclusion other than under the law Fuqua is totally and permanently disabled. We appreciate that the City of Fairhope has been benevolent in its relationship with Fuqua.
The judgment of the trial court is reversed and the case is remanded for entry of an order finding Fuqua to be totally and permanently disabled.
The foregoing opinion was prepared by Retired Appellate Judge L. CHARLES WRIGHT while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
REVERSED AND REMANDED WITH DIRECTIONS.
All the Judges concur.