On August 18, 1993, the appellee, Shirley A. James (the "worker"), filed a complaint seeking workmen's compensation benefits from her employer, Alabama Catfish, Inc., d/b/a Harvest Select Catfish (the "company"). The worker alleged that she had suffered an injury to her back on May 3, 1993,[1] her second day of work, when she slipped and fell on wet stairs. Following a bench trial, the trial court awarded the worker benefits. The company argues that the trial court erred in awarding benefits because, it argues, the trial court's determination that the worker is permanently and totally disabled is contrary to the evidence contained in the record as a whole.
The new Act provides that the determination of the trial court "shall be based on a preponderance of the evidence as contained in the record." § 25-5-81(c), Ala. Code 1975. The new Act further provides that no presumption of correctness will attach to a trial court's decision. § 25-5-81(e)(1). "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." § 25-5-81(e)(2). Accordingly, "[t]he trial court's judgment will not be reversed unless it is clear that the trial court's findings are manifestly contrary to the evidence as contained in the record as a whole or unless it is clear that fair-minded persons in the exercise of impartial judgment would adopt a contrary conclusion." Whitsett v. BAMSI,Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994).
"The test for total and permanent disability is the inability to perform one's trade and the inability to find gainful employment." Fuqua v. City of Fairhope, 628 So.2d 758, 759
(Ala.Civ.App. 1993). See also Liberty Trousers v. King,627 So.2d 422, 424 (Ala.Civ.App. 1993). A "permanent total disability" is defined as including "any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment." §25-5-57(a)(4)d., Ala. Code 1975; Russell v. Beech AerospaceServices., Inc., 598 So.2d 991, 992 (Ala.Civ.App. 1992).
The facts are summarized as follows. The worker was 29 years old at the time of her injury. She had completed the 10th grade of high school, and she had never obtained her GED. Her work history consisted of jobs as a car-hop at a fast food restaurant, a packer in a manufacturing plant, a laborer at a car wash, a laborer at a meat packing company, and a laborer at a packing job in a hardwood lumber mill. At the time of her injury, she was employed by the company as a fish skinner. *Page 919 
Following her injury, the worker reported the incident to her supervisor. The supervisor gave her Tylenol, and she continued to work for the rest of the day. The next day when she reported to work, she was in substantial pain, and she told her supervisor about the pain. Several days after her injury, her supervisor transported her to a doctor in Greensboro, Alabama. That weekend, the worker was admitted to the emergency room at Bryan Whitfield Memorial Hospital in Demopolis, Alabama, for severe back pain and numbness. The worker was then regularly treated by Dr. Judy Travis and Dr. M.J. Fitz-Gerald.
The worker testified that she has sharp pains in the lower part of her back and that sometimes her right leg will go numb. Dr. Travis prescribed a back brace, which the worker wears regularly. The worker also suffers from a limp and takes five different medications daily.
Dr. Travis stated in her deposition that upon her examination she found muscle spasms in the lower part of the worker's back. Dr. Travis referred the worker to a neurologist, who performed nerve conduction studies; those studies revealed neuropathies in the tibial, posterior tibial, and right sural nerves. Dr. Travis diagnosed a radicular neuropathy, and the nerve conduction studies performed by the neurologist confirmed Dr. Travis's diagnosis. Dr. Travis placed several restrictions on the worker: she cannot climb, lift, crawl; cannot be in places where she has to get out quickly; cannot be on unlevel ground; cannot sit for long periods of time; should not sit more than 15 minutes; and should not stand for longer than one hour. Dr. Travis concluded that the worker was 100% disabled.
The vocational expert, Thomas Christiansen, testified that he had reviewed the medical records and depositions of Dr. Travis and Dr. Fitz-Gerald. He considered the worker's work history, her lack of transferrable skills, and her education. He administered vocational testing and an intelligence test, which indicated an I.Q. of 66. He stated that a person with this worker's I.Q. and level of achievement would have no marketable skills to offer employers to compensate for her inability to do the manual aspects of a job. He concluded that she has a total loss of ability to earn income and that loss makes her totally disabled vocationally.
The company contends that the medical evidence, as a whole, does not support the trial court's conclusion that the worker is 100% disabled. The company relies heavily upon the testimony of Dr. Fitz-Gerald, the worker's treating physician, who diagnosed her with a lumbosacral strain and who testified that no permanent damage or disability would result. Dr. Fitz-Gerald disagreed with Dr. Travis's diagnosis of radicular neuropathy, because the MRI performed on the worker revealed no such injuries. Dr. Fitz-Gerald also indicated that he thought the worker was motivated by secondary gain. The company also relies upon Dr. Thomas A. Staner's findings. Dr. Staner is a neurologist and neurosurgeon who performed an independent medical examination on the worker. Dr. Staner agreed with Dr. Fitz-Gerald's assessment, and he found no evidence of a permanent injury. The company also contends that Dr. Travis's deposition testimony is fraught with contradictions and, therefore, that the trial court erred in relying upon it. We find this argument to be without merit.
Upon a review of the record, we conclude that the trial court's finding that the worker was 100% disabled is not manifestly contrary to the evidence. In support of its findings, the court considered the testimony of the worker and that of the vocational expert, and relied upon Dr. Judy Travis's medical diagnosis and conclusion that the worker was totally permanently disabled. Although the other medical experts disagreed with Dr. Travis's diagnosis and conclusion, we must view the facts in the light most favorable to the trial court's findings. The trial court's findings are supported by substantial evidence in the record. Therefore, we affirm the judgment.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.
THIGPEN, J., concurs in the result.
[1] Because of the date of the worker's alleged injury, the new Alabama Workers' Compensation Act applies. Ala. Acts 1992, Act No. 92-537. *Page 920