[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 284 
Richard Ellenburg appeals from the trial court's judgment finding that he sustained a 68% permanent partial disability as a result of an accident at his place of employment with Jim Walter Resources ("JWR") on April 4, 1988.[1]
Ellenburg was injured in a work-related accident while employed with JWR. While Ellenburg was attempting to place an "A" frame, the "A" frame fell and landed on Ellenburg's lower back. This accident caused injuries to his lower back, pelvis, and sacrum. Ellenburg was transported to Druid City Hospital ("DCH") in Tuscaloosa. DCH admitted Ellenburg, and he remained hospitalized for six weeks. During his hospitalization, Ellenburg received nonsurgical treatment for his various medical problems.
Eventually, Ellenburg was transferred to Carraway Methodist Hospital in Birmingham. During his two-week admission at Carraway, Ellenburg underwent sacral laminectomy surgery performed by a neurosurgeon, Dr. Evan Zeiger. Dr. Zeiger eventually referred Ellenburg to an orthopedist, Dr. William K. Dunham. Dr. Dunham has been Ellenburg's primary treating physician since that time. During Dr. Dunham's treatment of Ellenburg, Dr. Dunham referred Ellenburg to the UAB Pain Clinic, to Dr. Zeiger for two examinations in 1993, and to the Alabama Rehabilitation Institute.
On July 13, 1989, Ellenburg filed a complaint for workmen's compensation benefits. Following ore tenus proceedings, the trial court found that Ellenburg was entitled to recover from JWR workmen's compensation benefits for a permanent partial disability of 68% to the body as a whole.
On appeal, Ellenburg contends that the trial court erred in not finding him totally and permanently disabled and erred in failing to consider evidence regarding his receipt of Social Security disability benefits and UMWA disability benefits. Upon a review of the record, we affirm.
The two-step process of appellate review in workmen's compensation cases has been explained as follows:
 "Initially, the reviewing court will look to see if there is any legal evidence to support the trial court's findings. If such evidence is found, then the reviewing court determines whether any reasonable view of that evidence supports the trial court's judgment."
Ex parte Eastwood Foods, Inc., 575 So.2d 91, 93 (Ala. 1991). See also Ex parte Cash, 624 So.2d 576, 577 (Ala. 1993). Ellenburg concedes that there is legal evidence to support the trial court's judgment; however, he argues no reasonable view of that evidence supports the trial court's judgment.
Ellenburg challenges the trial court's finding that he sustained a 68% permanent partial disability. Ellenburg claims that a reasonable view of the evidence indicates that he is "totally and permanently" disabled, as defined under Ala. Code 1975, § 25-5-57(a)(4)d. That section defines such a disability as: "[A]ny physical injury or mental impairment resulting from an accident, which . . . permanently and totally incapacitates the employee from working at and being retrained for *Page 285 
gainful employment. . . ." This court has stated, "[t]his definition forms the 'sole basis on which an award of permanent total disability may be based.' " Mead Paper Co. v. Brizendine,575 So.2d 571, 573 (Ala.Civ.App. 1990) (emphasis omitted) (citation omitted).
Ellenburg first argues that no reasonable view of the evidence supports the trial court's determination that he can obtain reasonably gainful employment. Ellenburg claims he satisfies the test for total disability: the inability to perform one's trade and the inability to obtain other reasonably gainful employment. Trans Mart, Inc. v. Brewer,630 So.2d 469, 471 (Ala.Civ.App. 1993). "We note, however, that '[g]ainful employment means employment similar in remuneration to that earned prior to the injury. Implicit in this is that the gainful employment sought to be restored must be 'suitable.' By 'suitable' we mean employment which is compatible with the employee's pre-injury occupation, age, education, and aptitude.' " Id. (quoting Ex parte Beaver ValleyCorp., 477 So.2d 408, 412 (Ala. 1985)).
In support of his argument, Ellenburg relies solely upon the fact that his average weekly wage before the injury was $700 and the potential jobs that the vocational expert testified he could perform would pay only $280 per week. Ellenburg fails to note, however, that "suitable" employment includes employment that is compatible to the employee's pre-injury occupation, age, education, and aptitude. See Trans Mart, Inc. v. Brewer,supra. Considering all these factors, we conclude that the trial court's judgment is supported by a reasonable view of the evidence.
The evidence reveals that Dr. Dunham, Ellenburg's primary treating physician, stated in a May 1993 letter that he saw nothing in Ellenburg's spine to prevent him from being able to return to work. In his deposition, Dr. Dunham stated that he gave Ellenburg a medical impairment rating of 15%. In a letter to Ellenburg's attorney in 1994, Dr. Dunham stated that he would not place any restrictions on Ellenburg, other than the fact that he might have to modify his work according to the pain produced by activity. Ellenburg's other physician, Dr. Zeiger, also recommended that Ellenburg return to work.
In addition to this evidence, the trial court considered other factors in determining that Ellenburg could obtain suitable gainful employment. Ellenburg is a high school graduate and was 37 years old at the time of trial. Aptitude tests indicated that Ellenburg was at a high school grade level in all subjects. An intelligence test revealed that he had an above average I.Q., bordering on the "gifted" level. His past work experience shows that he has been capable of performing light mechanical work; he has worked in a supervisory capacity; and he has performed bookkeeping tasks. While employed at JWR, Ellenburg served as "fire boss," or an inspector. He had, in the past, attended an electrician training center and had passed all required tests; he had obtained an underground electrician's card; and he had attended a mine foreman's class and had obtained a "fire boss" certificate. Thus, a reasonable view of the evidence of Ellenburg's age, education, and aptitude support the trial court's judgment that Ellenburg was not totally and permanently disabled, because it indicates that he is able to obtain suitable gainful employment.
Ellenburg also claims that a reasonable view of the evidence does not support the trial court's judgment that there exists a stable market in which Ellenburg can find gainful employment. Ellenburg relies on Brunson Milling Co. v. Grimes, 267 Ala. 395,400, 103 So.2d 315, 318 (1958), which held that "[a]n employe[e] who is so injured that he can perform no services other than those which are so limited in quality, dependability, or quantity that a reasonably stable market for them does not exist, may well be classified as totally disabled." See also Keen v. Showell Farms, Inc., 668 So.2d 783
(Ala.Civ.App. 1995).
Ellenburg states that JWR's vocational specialist, Renee Whitson-Smith, identified only the jobs of inspector and troubleshooter as jobs that appear on a regular basis that Ellenburg could perform. Whitson-Smith, Ellenburg claims, did not know if any potential companies had either of these positions available for Ellenburg. Ellenburg also relies *Page 286 
upon M.C. Dixon Lumber Co. v. Phillips, 642 So.2d 477
(Ala.Civ.App. 1994), in support of his argument. In Phillips, the court noted that the testimony indicated such an uncertainty and unreliability in the work and wages for jobs for Phillips that the trial court could have concluded that the jobs would not be reasonably gainful employment. Id. at 479 (emphasis added). Ellenburg's own argument can be negated by this statement. The uncertainty and unreliability could indicate that the job would not be reasonably gainful employment; thus, there is a possibility that the opposite is true. Thus, a reasonable view of the evidence could support either argument.
Ellenburg also claims that the trial court erred in not properly considering his pain in the context of his vocational disability. "An injured employee's own subjective complaints of pain are legal evidence which may support a finding of disability." Jim Walter Resources, Inc. v. Budnick,619 So.2d 926, 927 (Ala.Civ.App. 1993). Also, expert opinions are not binding on the trial court, even when uncontroverted. Id. "When the testimony is conflicting, as here, the trial court's findings are conclusive where there is any evidence to support those conclusions." Id. at 927-28.
Ellenburg relies upon his own testimony regarding his pain and upon the testimony of Dr. Robert Griffin, Ellenburg's vocational expert, to support his argument. Dr. Griffin testified that pain, in and of itself, can be a disabling factor in one's work life and that Ellenburg's pain would prevent him from doing any physical activity consistently over an eight-hour day, five days a week. Ellenburg also relies upon Dr. Dunham's statement that Ellenburg's work might have to be modified according to the pain produced by activity and upon Whitson-Smith's testimony that if she were looking at Ellenburg's subjective complaints alone, then she would feel he was not employable.
JWR contends, however, that Ellenburg also testified that he is able to drive, that he does not have to use a cane, that he last wore a TENS unit for pain about a year before the trial, that he quit regularly using a back brace about a year before the trial, and that he is able to do some yard work around his home. JWR additionally notes that when Dr. Griffin formed his opinion that Ellenburg was totally and permanently disabled, he assumed that Ellenburg had a "low level" of intelligence. The uncontradicted evidence was that tests indicated Ellenburg had an above-average intelligence level. Dr. Griffin also admitted that his opinion was inconsistent with the information provided by the Physical Rehabilitation Institute concerning the work levels Ellenburg could physically perform and that he did not use that information. Also, Dr. Griffin's opinion was given without the benefit of knowing that Ellenburg had prior experience as an inspector at JWR; knowledge of that prior experience would have been important in making a determination regarding Ellenburg's transferable skills. Finally, Dr. Griffin's opinion was contrary to the opinions of Drs. Zeiger and Dunham.
JWR also points to Ms. Whitson-Smith's testimony that in her opinion Ellenburg had a 49% loss of earning capacity; that he is not totally and permanently disabled; that he has transferable skills; and that he can perform from a level of sedentary to light-medium employment.
We stated in Yellow Freight Systems, Inc. v. Green,612 So.2d 1209 (Ala.Civ.App. 1992):
 "[I]n workers' compensation cases the trial court will consider all the evidence, including its own observations, and interpret it to its own best judgment. The trial court is in the best position to observe the demeanor of witnesses and to assess their credibility. Further, the trial court, and not the reviewing court, determines the weight to be given to the testimony."
Id. at 1211-12 (citations omitted).
Accordingly, the trial court was in the best position to observe the witnesses' testimony and to determine the credibility of Ellenburg's testimony regarding his pain. The trial court's judgment is supported by a reasonable view of the evidence.
Ellenburg contends that the trial court's judgment is manifestly unjust and wrong, and contravenes the beneficent purposes of the Workers' Compensation Act. *Page 287 
Ellenburg relies upon the evidence of his pain and upon the expert opinions stating that he is vocationally disabled. As noted previously, however, no physician restricted Ellenburg from gainful employment. Also, no functional-capacities examinations or work-capacities assessments have indicated that Ellenburg should be restricted from gainful employment. The evidence shows that Ellenburg has a high school diploma, a reasonably high I.Q., transferable skills, and a favorable past work history. Accordingly, a reasonable view of the all the evidence supports the trial court's judgment.
Last, Ellenburg argues that the trial court erred in not considering evidence regarding his receipt of Social Security and UMWA disability benefits. Ellenburg quotes language fromFuqua v. City of Fairhope, 628 So.2d 758 (Ala.Civ.App. 1993), to support his argument. In Fuqua, this court reversed the trial court's finding that Fuqua was not totally and permanently disabled. In reversing, this court noted that Fuqua "has been determined to be totally disabled for Social Security and retirement purposes." Id. at 761.
At trial, Ellenburg sought to introduce evidence regarding the fact that he had been approved for Social Security benefits and that he was receiving such benefits at the time of trial. JWR's counsel objected, and the trial court sustained the objections. Specifically, the transcript of the trial testimony reads as follows:
 "Q. What are you doing for income at the present time?
 "A. Right now I receive Social Security disability and a two hundred dollar a month minimum UMWA disability pension.
 "JWR's counsel: Your Honor, I object as to the relevancy.
 "Ellenburg's counsel: I'm just going into what sources of income he has, and I'm not offering it for any other reason."
In Ellenburg's motion for new trial, he alleged that he had sought to introduce evidence regarding the fact that he had been approved for Social Security benefits and that he was receiving such benefits at the time of trial. JWR contends, however, that the excerpt quoted above contradicts Ellenburg's assertion in that motion. Clearly, the testimony indicates that Ellenburg sought to introduce the evidence to show the sources of income he had at the time of trial. His counsel stated that the evidence was not being offered for any other reason. Additionally, the trial court noted that Ellenburg had testified regarding his receipt of Social Security and UMWA benefits. Under these circumstances, we cannot say that the failure to allow this evidence was error.
Even assuming the trial court's failure to allow the evidence was error, it would not require reversal. Cf. American TennisCourts, Inc. v. Hinton, 378 So.2d 235, 239 (Ala.Civ.App.), cert. den., 378 So.2d 239 (Ala. 1979). When the judgment is supported by legal evidence, the trial court's findings will not be disturbed by this court. Den-Tal-Eze Manufacturing Co.v. Gosa, 388 So.2d 1006, 1008 (Ala.Civ.App. 1980). We conclude that the judgment of the trial court is supported by legal evidence and that a reasonable view of that evidence supports the judgment. Accordingly, the judgment of the trial court is affirmed.
AFFIRMED.
YATES, J., concurs.
ROBERTSON, P.J., concurs in the result only.
[1] The review of this case is governed by Ala. Code 1975, § 25-5-1
et seq., the Workmen's Compensation Act, which was in effect before the amendments of May 19, 1992.