On Application for Rehearing

THOMAS, Judge.
The opinion of June 8, 2012, is withdrawn, and the following is substituted therefor.
Masterbrand Cabinets, Inc. (“Masterb-rand”), appeals from a judgment awarding workers’ compensation benefits to Meleya Gilmore. The Talladega Circuit Court found that Gilmore was permanently and totally disabled as a result of an injury she suffered in a work-related accident, and it awarded benefits accordingly. We affirm.

Procedural Background

On October 12, 2007, Gilmore filed a complaint seeking workers’ compensation benefits, alleging that she had been injured in a January 29, 2003, work-related accident that had rendered her permanently and totally disabled; Masterbrand answered the complaint, denying the material allegations. On October 30, 2007, the trial court entered a pretrial scheduling order (“the scheduling order”), which, among other things, provided discovery deadlines. The parties conducted discovery.
On November 22, 2010, Masterbrand filed a notice to take the deposition of Don Hoffman; on November 24, 2010, Masterb-rand filed a notice to take the deposition of Dean Wennerberg. On November 23, 2010, Gilmore filed a motion to quash Masterbrand’s notice of deposition of Hoffman. She later filed a motion requesting that her motion to quash the deposition of Hoffman also apply to the notice of deposition of Wennerberg. In her motions to quash, she argued that the scheduling order prohibited Masterbrand from taking Hoffman’s and Wennerberg’s depositions (“the Empi depositions”) because, she contended, no further discovery was to be conducted by the parties because the discovery-cutoff date had passed. Additional *1106 ly, she argued that the deponents were not listed on Masterbrand’s September 23, 2010, witness list (“the original witness list”), that she was unaware of the proposed deponents’ occupations or their involvement in the action, and that her counsel was unable to attend the depositions in person or telephonically on the date noticed in the notices of depositions filed with the trial court. In response to the motions to quash the Empi depositions, Masterb-rand argued that the scheduling order was inapplicable because the Empi depositions were to be used at trial as testimony and not for discovery purposes and, alternatively, that the discovery-cutoff date had not been triggered because, it said, Gilmore had failed to provide it with written notice of maximum medical improvement (“MMI”) as required in the scheduling order. Additionally, Masterbrand stated that Gilmore’s counsel’s unavailability on the scheduled date did not constitute a ground to quash the notices of depositions, and it stated that it would reschedule the depositions at a date and time convenient for Gilmore’s counsel to attend either in person or telephonically. On November 30, 2010, the trial court granted Gilmore’s motions to quash the Empi depositions.
On December 1, 2010, Masterbrand filed a motion to reconsider the trial court’s decision to grant Gilmore’s motions to quash the Empi depositions.[1] On December 1, 2010, Masterbrand filed a “notice of trial deposition of Don Hoffman” and a “notice of trial deposition of Dean Wennerberg.” On December 6, 2010, Masterbrand filed an amended witness list specifically listing both Hoffman and Wen-nerberg; the December 6, 2010, witness list noted that Hoffman and Wennerberg would be testifying by deposition. Mast-erbrand proceeded to take Hoffman’s and Wennerberg’s depositions on December 7, 2010. Although Masterbrand rescheduled the depositions, notified Gilmore’s counsel of the new date, and provided Gilmore’s counsel telephonic access to participate in the depositions, Gilmore’s counsel did not attend or telephonically participate in the depositions based on the facts that the trial court had granted the motions to quash and that the Empi depositions were taken a mere nine days before trial; thus, Gilmore’s counsel did not cross-examine either Hoffman or Wennerberg.
On December 16, 2010, the trial court conducted a trial at which it heard ore tenus testimony. At the start of the trial, Masterbrand attempted to enter the Empi depositions into evidence and the trial court denied that request. After hearing the testimony at trial and considering the evidentiary submissions of the parties, including medical records and the deposition testimony of Dr. Michelle Turnley, Gilmore’s treating physician, the trial court entered a detailed judgment finding that Gilmore was permanently and totally disabled. On May 12, 2011, Masterbrand filed a motion to alter, amend, or vacate the judgment or, in the alternative, for a new trial. In its postjudgment motion, Masterbrand asserted that the trial court had erred in excluding the Empi depositions from evidence at trial and that the trial court’s judgment was unsupported by the evidence. On May 27, 2011, the trial court denied Masterbrand’s postjudgment motion. Masterbrand filed a timely notice of appeal to this court.

Factual Background

At the time of trial, Gilmore was a 46-year-old high-school graduate who had worked as a cashier, as a manager of a feed store, and as an assembly-line worker at Masterbrand. It was undisputed that she suffered a work-related injury while *1107 working for Masterbrand on January 29, 2003. Gilmore began experiencing pain in the left side of her body after having worked on the assembly line lifting cabinet doors. She notified Masterbrand of the injury and immediately sought medical treatment. She testified that after the injury the left side of her body around her neck and her left arm hurt and that her supervisor sent her to Masterbrand’s nurse, who, in turn, sent her to the hospital for medical treatment. The initial treating physicians diagnosed a cervical strain and recommended physical therapy. Gilmore returned to work, with some restrictions, on February 3, 2003, and, after completing further physical therapy, she returned to work, without any limitations, on March 17, 2003. Gilmore testified that she was still suffering from pain during this period and was experiencing some numbness in her arm.
Based on Gilmore’s continued complaints of pain, her initial treating physician ordered an MRI. The MRI indicated disk bulges at the C4-C5 and C5-C6 levels as well as a disk herniation at the C6-C7 level. The initial treating physician again placed Gilmore on several work restrictions and referred her to Dr. James White, a neurosurgeon, who opined that Gilmore was a candidate for surgery. Gilmore requested a second opinion and demanded a panel of four physicians from which she chose Dr. Donald H. Slappey, Jr. See § 25-5-77(a), Ala.Code 1975. Dr. Slappey performed a second MRI and determined that there had been no changes since the first MRI. Additionally, he determined that Gilmore was not a surgical candidate, continued treating her for a cervical strain, and recommended physical therapy. Dr. Slappey released her to full work without any limitations in August 2003. Gilmore testified that she continued to experience pain from the time she was injured on January 29, 2003, until her last day of work on October 10, 2003.
On October 10, 2003, Gilmore left her employment at Masterbrand, and she has not been employed since that date. Gilmore testified that, although she had ceased working, she would have “good days and bad days” and that she continued to take the medication Dr. Slappey had prescribed for her. In December 2004, Gilmore again demanded a panel of four physicians from which she chose Dr. Swaid N. Swaid. She complained of consistent arm and neck pain with greater pain on the left side of her body in 2004. Dr. Swaid ordered a third MRI, which revealed mild disk bulges at the C4-C5, C5-C6, and C6-C7 levels. He also noted degenerative changes to Gilmore’s spine. Dr. Swaid opined that Gilmore was not a surgical candidate and referred her to Dr. Michelle Turnley for pain management in February 2005.
Dr. Turnley administered Gilmore trigger-point injections and prescribed her Lortab and other pain medications. On August 11, 2005, Dr. Turnley placed Gilmore at MMI with no impairment rating. She also referred Gilmore for a functional-capacities evaluation (“FCE”), which indicated that Gilmore’s ability to lift was significantly impaired and that her lower-body functions, such as standing and walking, were also occasionally impaired. After receiving the FCE results, Dr. Turnley rescinded her initial impairment rating and assigned Gilmore a 4% impairment rating in September 2005 and ceased treating Gilmore.
In November 2008, Gilmore again sought medical treatment for her pain from Dr. Turnley. Gilmore testified that she had had trouble obtaining medical treatment through Masterbrand from September 2005 until November 2008. She testified that during that period she had *1108 continued taking the medications Dr. Turnley had initially prescribed for her because her personal internist, Dr. Renee Davis, had continued to prescribe her the medications during that period. In November 2008, Dr. Turnley diagnosed a persistent cerviealgia neck pain that did not radiate outward or downward. To treat Gilmore’s pain, Dr. Turnley prescribed Lortab, Nuerotin, and Flexeril. Further, in December 2009, she ordered Gilmore a TENS unit to manage the pain. Additionally, Dr. Turnley authorized several epidural blocks in an attempt to manage Gilmore’s pain. Dr. Turnley testified that she ordered a fourth MRI, which indicated ongoing degenerative changes and showed no substantial differences from the previous MRI tests. Dr. Turnley opined that Gilmore was functionally able to engage in employment in a light-work category, based on her medical history. She also stated that, to a reasonable degree of medical certainty, Gilmore’s complaints of dizziness, carpal tunnel syndrome, and arm and hand numbness are unrelated to her January 29, 2003, work-related injury.
Gilmore testified that the medications, the TENS unit, and the epidural blocks had provided some relief but that she suffers from consistent pain at an 8 on a 1-to-10 scale. She further stated that the pain intensifies when she engages in any activity and that she has not worked since she left Masterbrand in 2003 because of the debilitating pain she consistently experiences.
Russ Gurley, Masterbrand’s vocational expert, testified that he had assigned Gilmore a “vocational disability of 40 to 45 percent, based primarily Dr. Turnley’s restrictions.” He further opined that, because of Gilmore’s work history, she had the ability to find a job in the light-work category, such as in a cashier position. However, he further testified that he had not searched Gilmore’s area for available job opportunities in the light-work category.
In contrast, Jo Spradley, Gilmore’s vocational expert, opined that Gilmore is 100% vocationally disabled. Specifically, she testified that, “[cjonsidering the factors of [Gilmore’s] age, education, work history, [Gilmore’s] physical limitations, [Gilmore’s] subjective complaints, and the prescription medications [Gilmore was] taking, [she did not] believe [Gilmore was] capable of performing any of the jobs that are open at this present time.”

Issues

Masterbrand raises two issues on appeal: whether the trial court erred in concluding that the scheduling order barred Masterbrand from taking the Empi depositions and from having them admitted into evidence and whether the evidence produced is sufficient to support the trial court’s judgment finding that Gilmore was permanently and totally disabled.

Standards of Review

“ ‘The trial court has broad and considerable discretion in controlling the discovery process and has the power to manage its affairs ... to ensure the orderly and expeditious disposition of cases.’ Salser v. K.I.W.I., S.A., 591 So.2d 454, 456 (Ala.1991). Therefore, this Court will not interfere with a trial court’s ruling on a discovery matter unless this Court ‘ “determines, based on all the facts that were before the trial court, that the trial court clearly [exceeded] its discretion.” ’ Ex parte Henry, 770 So.2d 76, 80 (Ala.2000) (quoting Ex parte Horton, 711 So.2d 979, 983 (Ala.1998)).”
Ex parte Vulcan Materials Co., 992 So.2d 1252, 1259 (Ala.2008).
*1109 “Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers’ compensation cases:
“ ‘(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“ ‘(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.’
“Substantial evidence is ‘ “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” ’ Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).”
White Tiger Graphics, Inc. v. Clemons, 88 So.3d 908, 910 (Ala.Civ.App.2012).

Discussion

First, Masterbrand contends that the trial court exceeded its discretion in concluding that the scheduling order prohibited it from taking the Empi depositions or entering the Empi depositions into evidence at trial. In support of its argument, Masterbrand contends that the discovery-cutoff date, as designated in the scheduling order, was inapplicable to the Empi depositions because, it says, the Empi depositions were “trial” depositions, allowed pursuant to Rule 32(a)(3), Ala. R. Civ. P., and not “discovery” depositions. Alternatively, it contends that the discovery-cutoff date was never triggered because Gilmore failed to provide written notice that she had reached MMI as required in the scheduling order.[2] We reject those contentions.
As explained above, the trial court granted Gilmore’s motions to quash the Empi depositions. However, Masterbrand filed subsequent notices to take “trial” depositions of Hoffman and Wennerberg and proceeded to travel to Minnesota and take the Empi depositions after the trial court had quashed its original deposition notices. Gilmore’s counsel did not attend the Empi depositions based on the fact that the trial court had previously quashed the deposition notices, and, thus, Gilmore had no opportunity to cross-examine either deponent. In denying Masterbrand’s motion to reconsider the trial court’s decision to grant Gilmore’s motions to quash the Empi depositions and Masterbrand’s request to offer the Empi depositions into the record, the following exchange oc *1110 curred between the parties and the trial court:
“[Masterbrand’s counsel]: Judge, we do offer [the Empi depositions] into the record.
“THE COURT: Your response, [Gilmore’s counsel]?
“[Gilmore’s counsel]: Judge, these depositions were taken after the time for taking depositions contained in your scheduling order expired. And they were also taken after I filed a motion to quash their deposition notice and, [you], ruled and — that the scheduling order in essence prohibited the taking of further depositions. And — and granted my motion to quash, even after that, they went ahead and went to — is it Minnesota?
“[Masterbrand’s counsel]: Yes.
“[Gilmore’s counsel]; Minnesota. And took these depositions. I have no idea what they say and I have no idea why they went to Minnesota, but, [you], had already quashed their deposition notice and in essence ruled that the time had expired.
“THE COURT: Is that right, [Masterb-rand’s counsel]? Did I do that? That’s a yes or no.
“[Masterbrand’s counsel]: The first deposition notice — the notices were resent. They were specific notices of trial deposition.
“THE COURT: That’s not what I’m asking. Did I issue an order quashing the deposition?
“[Masterbrand’s counsel]: You issued an order to quash deposition—
“THE COURT: And you went ahead?
“[Masterbrand’s counsel]: — of Don Hoffman, yes, sir.
“THE COURT: All right. That’s denied.
“[Masterbrand’s counsel]: Judge, the motion to reconsider points out the fact that [Gilmore’s counsel] pointed to the scheduling order, that, [you], entered your order — I think you pointed to the scheduling order with relying on your decision. I want to point out to the Court that the scheduling order requires [Gilmore] — the date that’s triggered in the scheduling order, starts when [Gilmore] gives written notification to [Masterbrand] that [Gilmore] is at MMI. That’s when the dates in your order are triggered, that’s when the time starts to run. We have never received written notification from [Gilmore’s counsel] that his client, that Ms. Gilmore, is at MMI. Therefore, it would be our position those dates never started to run.
“THE COURT: Overruled.
“[Masterbrand’s counsel]: Further, Judge, the depositions are for trial purposes. These are depositions of people outside the power of the court and they were trial depositions, evidentiary depositions as opposed to discovery depositions. We would ask the court allow these trial depositions, which they were specifically noticed as to come in as Defendant’s Exhibits 1 and 2.
“THE COURT: Overruled.
“[Masterbrand’s counsel]: Judge, I’d like to make an offer of proof on these depositions. I can do it now or I can do it during my case. But, we feel these depositions, if they’re allowed to come into evidence would give relevant background that would be beneficial to the Court regarding some of her use of TENS unit and when supplies were given to her, as well as give the court knowledge and information related to the purpose of the TENS unit and what a TENS unit does. We feel we would be greatly prejudiced if we are not allowed to enter these trial depositions into the record as evidence.
*1111 “THE COURT: The way I see it, you prejudiced yourself by not getting up there earlier and doing it.
[[Image here]]
“[Masterbrand’s counsel]: Judge, if I may, we would again to ask the court to reconsider it’s exclusion of [the Empi depositions]. We feel that those — if those were allowed in, they would show evidence of the TENS unit, the usage of the TENS unit, which would be helpful in the court making determination in this case and we feel we would be greatly prejudiced if these are not allowed to be—
“THE COURT: Would it be prejudiced to [Gilmore’s counsel] if he was not permitted to cross-examine those people that gave those depositions? I mean, would that be any prejudice to him at all?
“[Masterbrand’s counsel]: I can’t speak to that. I will say that I—
“THE COURT: Overruled.”
As evidenced by the exchange, the trial court’s reasoning for excluding the Empi depositions hinged on its determination that the discovery-cutoff date, as stated in the scheduling order, had passed and its implicit finding that Gilmore would have been prejudiced by the introduction of the Empi depositions based on the facts surrounding the initial requests to take the Empi depositions and the subsequent taking of the depositions, the initial notices as to which the trial court had explicitly granted motions to quash.
On appeal, Masterbrand first argues that the scheduling order cannot be used as a basis to quash the notices of deposition or deny its offer of the Empi depositions into evidence at trial because, it says, the Empi depositions are “trial” depositions of an unavailable witness, pursuant to Rule 82, Ala. R. Civ. P., and not “discovery” depositions, and, thus, the discovery-cutoff date is inapplicable. We reject this argument and conclude that there is no distinction between discovery depositions and trial depositions and that the trial court did not exceed its discretion in this case.
In asserting its argument to the trial court and before this court in its brief and at oral argument, Masterbrand relies on numerous federal cases to support its position that the trial court erred in prohibiting the Empi depositions from being taken or admitted into evidence based on the expiration of the discovery-cutoff date listed in the scheduling order.[3] See Charles v. Wade, 665 F.2d 661, 664-65 (5th Cir.1982) (holding that the district court had erred in denying a party leave to depose an unavailable witness — an inmate confined to prison — because the discovery-cutoff date had passed and noting that there was a practical distinction between trial depositions and discovery depositions); Odell v. Burlington N. R.R., 151 F.R.D. 661, 663 (D.Colo.1993) (holding that trial depositions are not discovery depositions); Spangler v. Sears, Roebuck & Co., 138 F.R.D. 122, 124 (S.D.Ind.1991) (concluding that, although the discovery period has closed, “a party may still prepare for trial by taking the depositions of witnesses whose unavailability for trial is anticipated” when allowing the taking of the depositions poses no detriment to either party); Estenfelder v. Gates Corp., 199 F.R.D. 351, *1112 356 (D.Colo.2001) (finding that there is a practical difference between discovery depositions and trial depositions and holding that the discovery-cutoff date did not apply to the taking of trial depositions when plaintiff failed to show that he would be prejudiced by allowing the depositions); and Mathews v. Denver Newspaper Agency LLP, (Civil Action No. 07-cv-02097-WDM-KLM, Jan. 15, 2009) (D.Colo.2009) (not published in F.Supp.2d) (same). However, in contrast, several other federal courts have rejected the notion that there is a distinction, even a practical one, between trial depositions and discovery depositions. Henkel v. XIM Prods., Inc., 138 F.R.D. 556, 557 (D.Minn.1991) (“Neither the Rules of Civil Procedure nor the Rules of Evidence make any distinction between discovery depositions and depositions for use at trial.”); Integra Lifesciences I, Ltd. v. Merck KGaA, 190 F.R.D. 556 (S.D.Cal.1999) (finding no distinction between a discovery deposition and a trial deposition and stating that Charles, 665 F.2d 661, had been decided before several amendments to the Federal Rules of Civil Procedure, specifically the amendment to Rule 16, which provides for scheduling orders dictating the discovery process); United States v. International Bus. Machs. Corp., 90 F.R.D. 377, 381 (S.D.N.Y.1981) (“Rule 32 does not ‘evince a distinction as to admissibility at trial between a deposition taken solely for purposes of discovery and one taken for use at trial....”’ (quoting Rosenthal v. Peoples Cab Co., 26 F.R.D. 116, 117 (W.D.Pa.1960))); and Chrysler Int’l Corp. v. Chemaly, 280 F.3d 1358, 1362 (11th Cir.2002) (declining to extend Charles, 665 F.2d 661, to a situation where the party to be deposed was a “free” individual and the party seeking the deposition had “unduly delayed in undertaking to obtain” the deposition). Thus, the federal caselaw regarding this issue is scant and conflicting.
No Alabama court has directly addressed whether the expiration of a discovery-cutoff date in a scheduling order can preclude a party from taking the deposition of a party outside the court’s subpoena power. However, in Ex parte Coots, 527 So.2d 1292 (Ala.1988), the Alabama Supreme Court noted that, like the Federal Rules of Civil Procedure, the Alabama Rules of Civil Procedure do not distinguish between discovery depositions and trial depositions.
In Ex parte Coots, our supreme court issued a writ of mandamus directing the trial court to allow a doctor’s deposition, which had been taken during the discovery period, to be admitted into evidence pursuant to Rule 32(a)(3)(D), Ala. R. Civ. P. Id. at 1296. The trial court had excluded the deposition at trial because the defendant had argued that he would be prejudiced due to the fact that he was deprived of his right to fully cross-examine the doctor because he had not conducted discovery regarding the doctor’s qualifications and opinions and because the plaintiffs notice of deposition had suggested that the deposition was only a discovery deposition and not an “evidentiary” deposition. Id. at 1295. The supreme court determined that the trial court had erred in excluding the doctor’s deposition because the notice of the deposition stated that the doctor’s deposition was to be used for “ ‘the purpose of discovery or for use as evidence in this cause, or for both purposes,’ ” and the defendant could have conducted other forms of discovery to learn of the doctor’s qualifications and opinions in order to effectively cross-examine him in the deposition. Id. at 1294. More importantly, however, in reaching its conclusion, our supreme court noted that the Alabama Rules of Civil Procedure do not differentiate between discovery depositions and “evidentiary” depositions and *1113 cited with approval several federal-court opinions that had also rejected the argument that a distinction existed between discovery depositions and “evidentiary” depositions. Id. at 1294-95.
Thus, Ex parte Coots does not provide direct guidance on the issue presented in this appeal — whether a discovery-cutoff date can be used as the a basis to exclude a deposition, otherwise allowed pursuant to Rule 32(a), from evidence at trial; however, it provides relevant and binding authority for the proposition that the Alabama Rules of Evidence do not distinguish between discovery depositions and trial depositions. See § 12-3-16, Ala.Code 1975.
After considering numerous federal authorities, our supreme court’s decision in Ex parte Coots, and the facts of this case, we cannot conclude that the trial court exceeded its discretion by granting Gilmore’s motions to quash the Empi depositions and in excluding the Empi depositions from evidence at trial based on the expiration of the discovery-cutoff date listed in the scheduling order.
At oral argument before this court, Masterbrand asserted that, based on the previously cited federal authorities, trial courts should employ a balancing test to weigh the possible prejudice of taking the deposition after the expiration of the discovery-cutoff date against the need for the deposition. Masterbrand contends that, in this case, the trial court erred because, it says, the trial court did not balance the possible prejudice versus the need for the Empi depositions, and, instead, relied solely on the expiration of the discovery-cutoff date in the scheduling order in deciding to quash the deposition notices and to deny its request to enter the Empi depositions into evidence, although the Empi depositions met the requirements of Rule 32(a)(3)(B), Ala. R. Civ. P. We disagree.
Initially, we note that the “[t]he trial court has broad and considerable discretion in controlling the discovery process and has the power to manage its affairs ... to ensure the orderly and expeditious disposition of cases.” Salser v. K.I.W.I., S.A., 591 So.2d 454, 456 (Ala.1991).[4] Thus, the trial court had the ability to allow some variation from the dates listed in the scheduling order if it determined that Masterbrand had had good cause for waiting until November 22 and November 24, 2010, respectively 23 and 21 days before the scheduled December 16, 2010, trial date, to file its notices of depositions notifying the court that it intended take additional “trial” depositions. In this case, it was undisputed that Masterbrand had failed to list either Hoffman or Wenner-berg as witnesses on the original witness list it had filed with the trial court. The record also indicates that the trial date was set after the parties had notified the trial court in writing that each party was prepared for trial, as is customary practice in workers’ compensation cases in Alabama. Most importantly, though, the record indicates that the trial court implicitly concluded that Gilmore would have been prejudiced had Masterbrand been allowed to take the Empi depositions or to enter the Empi depositions into evidence. This implicit finding distinguishes this case from the federal authorities that Masterb-rand relies upon on appeal. See Charles v. Wade, 665 F.2d at 665 (“permitting the deposition to be taken would not have *1114 prejudiced appellees in any way”); Odell v. Burlington N. R.R., 151 F.R.D. at 663; Spangler v. Sears, Roebuck & Co., 138 F.R.D. at 124-25; Estenfelder v. Gates Corp., 199 F.R.D. at 356; and Mathews v. Denver Newspaper Agency LLP, supra. Thus, based on our review of the record and the trial court’s implicit finding regarding prejudice, we cannot conclude that the trial court exceeded its discretion.
Next, Masterbrand argues that the Empi depositions were not prohibited by the scheduling order because, it says, the discovery-cutoff date had not run on December 7, 2010, the date it took the Empi depositions, because Gilmore had never provided it with written notification that she had attained MMI. This argument lacks merit.
The October 30, 2007, scheduling order provided, in pertinent part, as follows: “That [Masterbrand] shall complete all discovery within 120 days from the date that counsel for [Gilmore] provides written notification to counsel for [Masterbrand] that [Gilmore] has reached MMI, or the date of this Order, whichever event is last to occur.” In this case, Gilmore had been placed at MMI on August 11, 2005 — almost two and a half years before the commencement of the action and the issuance of the scheduling order. The trial court could have reasonably concluded that Masterbrand had constructive notice that Gilmore had reached MMI because on September 15, 2009, Dr. Turnley testified by deposition that Gilmore had been placed at MMI on August 11, 2005, and the parties stipulated at trial that the date of MMI was the date stated in Dr. Turnley’s deposition and records. Further, approximately 15 months passed between the date of Dr. Turnley’s deposition and the date Masterbrand sent its notice that it intended to take the Empi depositions. Thus, we reject Masterbrand’s argument that the discovery deadline had not been triggered on December 7, 2010, a mere nine days before the trial in this case.
Accordingly, because “[t]he Alabama Rules of Civil Procedure vest broad discretionary power in the trial court to control the discovery process and to prevent its abuse,” Ex parte Nissei Sangyo America, Ltd., 577 So.2d 912, 913 (Ala.1991), we conclude that the trial court did not exceed its discretion in quashing the notices of depositions and in denying Masterbrand’s request to admit into evidence the Empi depositions because the deposition notices were filed less than a month before the scheduled trial date, because the deponents were not listed on Masterbrand’s original witness list, because Gilmore’s counsel did not have an opportunity to cross-examine the deponents, because the trial court implicitly determined that Gilmore would have been prejudiced by allowing the Empi depositions into evidence, and because the discovery deadline had expired. To hold otherwise would allow litigants to circumvent established Rule 16, Ala. R. Civ. P., discovery deadlines without leave of the court based merely on the nomenclature of a motion, which our supreme court has rejected. Thus, we affirm the trial court’s actions insofar as it granted Gilmore’s motions to quash the Empi depositions and denied Masterbrand’s request to enter the Empi depositions into evidence.
Finally, Masterbrand argues that the trial court erred in finding that Gilmore is permanently and totally disabled. Specifically, Masterbrand asserts that the medical evidence, the vocational evidence, and the testimony presented at trial do not support the trial court’s judgment. In asserting its argument, Masterbrand contends that the only evidence presented to the trial court supporting its finding was Gilmore’s self-serving testimony. Mast- *1115 erbrand also highlights Dr. Turnley’s testimony and focuses on alleged deficiencies in Spradley’s vocational opinion.
In reviewing this argument,
“[ o]ur review is restricted to a determination of whether the trial court’s factual findings are supported by substantial evidence. Ala.Code 1975, § 25-5-81(e)(2). This statutorily mandated scope of review does not permit this court to reverse the trial court’s judgment based on a particular factual finding on the ground that substantial evidence supports a contrary factual finding; rather, it permits this court to reverse the trial court’s judgment only if its factual finding is not supported by substantial evidence. See Ex parte M & D Mech. Contractors, Inc., 725 So.2d 292 (Ala.1998). A trial court’s findings of fact on conflicting evidence are conclusive if they are supported by substantial evidence. Edwards v. Jesse Stutts, Inc., 655 So.2d 1012 (Ala.Civ.App.1995).”
Landers v. Lowe’s Home Ctrs., Inc., 14 So.3d 144, 151 (Ala.Civ.App.2007) (opinion on original submission).
Additionally, in regard to determining whether an employee is permanently and totally disabled, this court has stated:
“ ‘ “The test for total and permanent disability is the inability to perform one’s trade and the inability to find gainful employment.” Fuqua v. City of Fairhope, 628 So.2d 758, 759 (Ala.Civ.App.1993). See also Liberty Trousers v. King, 627 So.2d 422, 424 (Ala.Civ.App.1993). A “permanent total disability” is defined as including “any physical injury or mental impairment resulting from an accident, which injury or impairment permanently and totally incapacitates the employee from working at and being retrained for gainful employment.” § 25-5-57(a)(4)d., Ala.Code 1975; Russell v. Beech Aerospace Services, Inc., 598 So.2d 991, 992 (Ala.Civ.App.1992).’
“Alabama Catfish, Inc. v. James, 669 So.2d 917, 918 (Ala.Civ.App.1995).”
CVS Corp. v. Smith, 981 So.2d 1128, 1136 (Ala.Civ.App.2007).
The record reveals the following relevant facts. Gilmore testified to debilitating pain in the left side of her body, specifically in her neck, shoulder, and back, consistently rating the pain as an 8 on a scale of 1 to 10. She testified that the pain is constant, even after taking her prescribed medications, and that her pain interferes with her ability to sleep. Gilmore stated that she had lost the ability to dress herself and to fix her hair on a daily basis, as well as the ability to perform numerous other activities, such as driving. Gilmore further stated that the pain interfered with her ability to concentrate and that her “whole lifestyle ha[d] changed because of th[e] injury.”
Dr. Turnley testified that she found Gilmore’s subjective complaints of pain to be credible and that having a pain level of eight can be debilitating and can interfere with one’s ability to think and concentrate. However, she opined that, based on Gilmore’s medical history, Gilmore most likely experienced pain at a five or a six level. Dr. Turnley further opined that Gilmore was able to engage in gainful employment and that, she believed, Gilmore was functionally able to join the workforce in a light-duty-work-eategory job. Gilmore’s FCE indicated that Gilmore had trouble consistently lifting. Dr. Turnley testified that there were objective medical findings to substantiate Gilmore’s complaints of pain. Dr. Turnley further testified that she would defer to a vocational expert regarding Gilmore’s ability to find gainful employment in the light-work category.
*1116 Both Spradley and Gurley, although they assigned Gilmore differing impairment ratings, testified that they found Gilmore and her complaints of pain to be credible. Spradley testified that Gilmore was 100% vocationally disabled, and Spradley opined that Gilmore’s pain resulted from her shoulder and neck injury. In contrast, Gurley assigned Gilmore a 40-45% disability rating; however, he testified that a pain level of 8 on a l-to-10 scale would be debilitating.
In its judgment, the trial court noted that it “was impressed with [Gilmore]’s candor and genuineness,” found that Gilmore’s “testimony [was] credible,” and stated that her “demeanor and appearance in open court [was] consistent with her complaints of chronic, debilitating pain.” The trial court further found that Gilmore “suffers from chronic pain which is severe, excruciating, and debilitating and that pain within itself precludes [Gilmore] from engaging in any reasonable, gainful employment” and that “the pain arises as a result of [Gilmore]’s neck and shoulder injury and that her neck and shoulder injuries are the proximate result of her on-the-job accident of January 29, 2003.”
Because a worker can be determined to be totally and permanently disabled if his or her ability to find and engage in gainful employment is so limited that he or she cannot expect to consistently work due to pain and physical limitations resulting from a work-related injury and because, in this case, Gilmore testified of chronic pain at a level eight and vocational and medical experts testified that consistent pain in itself can be debilitating, we cannot conclude that the trial court erred in finding that Gilmore was totally and permanently disabled. See Stebbins Eng’g & Mfg. Co. v. White, 457 So.2d 425, 427 (Ala.Civ.App.1984); and Caseco, LLC v. Dingman, 65 So.3d 909, 925-26 (Ala.Civ.App.2010) (holding that there was sufficient evidence to support the trial court’s finding of an employee’s permanent total disability, although the evidence was conflicting, based on the vocational testimony, the fact that the employee’s chronic pain rated a 9, on a l-to-10 scale, and the side effects of the pain medications).
In its appellate brief, Masterbrand asserts several additional, more specific arguments regarding its challenge to the sufficiency of the evidence. We will briefly consider those arguments.
First, Masterbrand contends that Gilmore’s pain does not disable her body as a whole and, therefore, that the evidence presented fails to support a finding of permanent total disability. In an attempt to bolster its argument, Masterbrand cites Norandal U.S.A., Inc. v. Graben, [Ms. 2080679, March 12, 2010] - So.3d -, - (Ala.Civ.App.2009), and G.UB.MK Constructors v. Davis, 78 So.3d 998, 1000 (Ala.Civ.App.2011). Both cases deal with injuries to a scheduled member and the “pain exception.” In this case, Gilmore’s work-related injury did not involve a scheduled member, and, thus, the holdings in Graben and Davis are inapplicable. See Ala.Code, § 25-5-57(a)(3); Grace v. Standard Furniture Mfg. Co., 54 So.3d 909, 913 (Ala.Civ.App.2010) (stating that injuries to the employee’s neck and shoulder were injuries to nonscheduled members of the body); and Millry Mill Co. v. Manuel, 999 So.2d 508, 520 (Ala.Civ.App.2008) (noting that the trial court had found the employee to be “permanently and totally disabled as a result of the injury to his neck, a body part not listed in the schedule”).
Next, Masterbrand contends that the trial court’s judgment is unsupported by substantial evidence because, it claims, Gilmore’s unrelated medical conditions are a contributing cause of her limitations. Specifically, it argues that her carpal tunnel *1117 syndrome, dizziness, and arm and hand numbness limited her ability to perform on the FCE and her ability to be gainfully employed. However, the trial court considered and rejected this argument in its judgment. Specifically, the trial court stated “[t]hat [Gilmore] suffers from other conditions besides her neck and shoulder injury, including carpal tunnel syndrome. The court finds no credible evidence that the carpal tunnel syndrome is job related but the Court also finds that [Gilmore’s] 100% disability results from her neck and shoulder injuries without taking into account any of her other medical conditions.” Thus, the trial court concluded that Gilmore’s debilitating pain was not the result of the unrelated medical conditions. Viewing “the facts in the light most favorable to the findings of the trial court,” Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003), we reject Masterbrand’s argument that the trial court erred by finding that Gilmore’s unrelated medical conditions did not contribute to her disability. See Water Bros. Contractors, Inc. v. Wimberley, 20 So.3d 125, 132-33 (Ala.Civ.App.2009) (holding that the trial court did not erroneously rely on the employee’s unrelated medical conditions when awarding workers’ compensation benefits because the trial court’s findings of fact failed to mention the employee’s unrelated medical conditions).
Finally, Masterbrand argues, without citation to any authority, that the trial court inappropriately relied upon the alleged treatment undertaken by Gilmore’s personal internist, Dr. Davis. We find that the record does not support this argument. As Masterbrand highlights in its appellate brief, Dr. Davis’s medical records were not introduced into evidence at trial and Dr. Davis did not testify at trial; thus, the trial court could not have considered any of Dr. Davis’s treatment because it had no evidence of her treatment to consider. In its judgment, the trial court stated:
“[Masterbrand] during the trial of this case made much ado trying to show that [Gilmore] went approximately two (2) years without any treatment from Dr. Michelle Turnley. [Gilmore] testified that during that period of time the workers’ compensation carrier would not authorize her treatment with Dr. Michelle Turnley and that she was still in need of her medication and [Gilmore] went to her family practitioner, Dr. Renee Davis, to procure her prescriptions for pain. The Court also finds this testimony credible and believable.”
The trial court mentioned Dr. Davis, but it did not consider her alleged treatment of Gilmore. Instead, the trial court’s statement indicates that it mentioned Dr. Davis in connection only with its credibility assessment of Gilmore and her complaints of debilitating pain given that there was a significant “gap” in her pain-management treatment with Dr. Turnley from 2005 until 2008. Masterbrand presented evidence contradicting Gilmore’s testimony that she had repeatedly requested an appointment with a treating physician during the “gap” period; however, the trial court rejected Masterbrand’s evidence on the issue and expressly found in favor of Gilmore, as noted above.
“ ‘[I]t ⅛ well established that the trial court is in the best position to observe the demeanor and credibility of the employee and other witnesses in a workers’ compensation case.’ Mayfield Trucking Co. [v. Napier ], 724 So.2d [22,] 25 [ (Ala.Civ.App.1998) ]. ‘The resolution of conflicting evidence is within the exclusive province of the trial court, and this court is forbidden to invade that province upon review.’ Id.”
Clear Creek Transp., Inc. v. Peebles, 911 So.2d 1059, 1063 (Ala.Civ.App.2004). *1118 Thus, we cannot conclude that the trial court inappropriately relied on Dr. Davis’s alleged treatment of Gilmore in making its decision to award Gilmore workers’ compensation benefits for permanent total disability.
Based on our review of the record, we cannot conclude that the trial court’s finding that Gilmore was totally and permanently disabled is unsupported by substantial evidence.

Conclusion

For the reasons discussed above, we affirm the trial court’s judgment.
APPLICATION OVERRULED; OPINION OF JUNE 8, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, J., concur.
BRYAN and MOORE, JJ., concur in the result, without writings.

. The trial court orally denied this motion at trial.

. On rehearing, Masterbrand argues that this court erred in determining that the "discovery deadline had expired” because, it says, the trial court's discovery period was "open” pursuant to the trial court’s grant of Gilmore’s September 23, 2010, motion to allow additional discovery. This is the first time that Masterbrand has asserted this specific argument; the record indicates that Masterbrand failed to assert this argument before the trial court either at trial or in its postjudgment motion. Masterbrand also failed to assert this argument in its initial appellate brief; instead, it previously argued only that the discovery period was open because Gilmore had failed to provide it with written notice of MMI as required in the scheduling order, an argument that this court fully considered on original submission. " '[I]t is a well-settled rule that an appellate court’s review is limited to only those issues that were raised before the trial court. Issues raised for the first time on appeal cannot be considered.’ ” Neal v. Neal, 856 So.2d 766, 778 (Ala.2002) (quoting Beavers v. County of Walker, 645 So.2d 1365, 1372 (Ala.1994)). Thus, because Masterbrand raises this argument for the first time in its application for a rehearing, we will not consider this issue on appeal. See Millar v. Wayne’s Pest Control, 804 So.2d 213, 217 (Ala.Civ.App.2001) (declining to consider an argument that appellant had failed to raise before the trial court and had asserted for the first time on application for a rehearing).

. As is well established, federal caselaw interpreting the Federal Rules of Civil Procedure may be persuasive authority in analyzing the Alabama Rules of Civil Procedure. First Baptist Church of Citronelle v. Citronelle-Mobile Gathering, Inc., 409 So.2d 727, 729 (Ala.1981). However, federal authorities are not binding on an appellate court interpreting the Alabama Rules of Civil Procedure. Id.

. We further note that in the present case the underlying action concerned a workers’ compensation claim and that Ala.Code 1975, § 25-5-81, provides specific limitations on discovery in workers’ compensation cases in addition to the limitations on discovery found in the Alabama Rules of Civil Procedure. Ala. Code 1975, § 25-5-81 (“It is the intent of this section that limited discovery shall be available.”).